**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SPRINT COMMUNICATIONS COMPANY L.P. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. _____ |
| | ) | |
| SOUTHWESTERN BELL TELEPHONE COMPANY; | ) | |
| BIG RIVER TELEPHONE COMPANY, LLC; | ) | |
| CHARITON VALLEY TELEPHONE CORPORATION; | ) | |
| MCIMETRO ACCESS TRANSMISSION SERVICES LLC; | ) | |
| MCI COMMUNICATIONS SERVICES, INC.; | ) | |
| FIDELITY TELEPHONE COMPANY; | ) | |
| SUREWEST KANSAS, INC.; | ) | |
| ELLINGTON TELEPHONE COMPANY; | ) | |
| FAIRPOINT COMMUNICATIONS MISSOURI, INC.; | ) | |
| MARK TWAIN COMMUNICATIONS COMPANY; | ) | |
| MARK TWAIN RURAL TELEPHONE COMPANY; | ) | |
| STEELVILLE TELEPHONE EXCHANGE, INC.;  and | ) | |
| WINDSTREAM MISSOURI, INC. | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Sprint Communications Company L.P. ("Sprint"), by and through its attorneys, brings

this Complaint against the above-captioned Defendants (collectively, "Defendants") as follows:

## INTRODUCTION

1.     This lawsuit concerns the exchange of wireless communications between

Commercial Mobile Radio Service ("CMRS") carriers and the Defendants where Sprint acts as

an intermediary carrier.  Since 1996, the Federal Communications Commission ("FCC") has

made plain that CMRS calls which originate and terminate in the same "Major Trading Area" or

"MTA" (*i.e.*, intraMTA calls) are not subject to switched access charges.  Despite this clear

recitation of law, and reiteration of the point by the FCC and federal courts, the Defendants all charge Sprint originating and terminating switched access charges on intraMTA calls from their interstate and intrastate switched access tariffs.  Sprint seeks a refund of these improper charges and a judicial declaration that the Defendants should cease and desist this illegal practice.

2.      The telecommunications industry was historically comprised of local and long distance carriers that provided wireline service. State public utilities commissions, such as the Missouri Public Service Commission, defined the boundaries of the local exchange areas: wireline calls originating (i.e., made) and terminating (i.e., received) within a local exchange were local calls and those originating and terminating in different local exchanges (*i.e.,* interexchange calls) were long distance calls.

3.      In most instances, local exchange carriers ("LECs") – like each of the Defendants – owned the facilities (otherwise known as a "common line" or "loop") connected to each end user's home or business.  As a result, the LECs charged long distance carriers (also referred to as "interexchange carriers" or "IXCs") like Sprint "originating switched access charges" to originate a long distance toll call, and "terminating switched access charges" for the use of that common line to terminate a long distance toll call.

4.      The LECs, subject to supervision of regulators, defined the rates, terms and conditions under which they would assess switched access charges on calls originated for or terminated for long distance carriers.  These rates, terms and conditions were set forth in each LEC's access tariffs:  interstate access tariffs were filed with the Federal Communications Commission ("FCC"), and intrastate access tariffs were filed with state public utilities commissions, such as the Missouri Public Service Commission.

5.      When wireless service entered the commercial market, the FCC defined different boundaries to determine when a wireless call – otherwise known as a Commercial Mobile Radio Service or "CMRS" call – is considered a local call.  A wireless call is one that originates from or terminates to a CMRS provider (hereinafter "CMRS calls").

6.      The FCC decided to use the largest wireless license area at that time – the Major Trading Area or "MTA" – as the area within which calls would always be deemed local.  ***See Exhibit 1*** for an MTA Map.  Calls originated and terminated in the same MTA ("intraMTA") are considered local calls.

7.      Over a period of years beginning with the First Report and Order in 1996, the FCC has issued rules and decisions stating that intraMTA calls are not subject to switched access charges.  Numerous federal courts have uniformly upheld these rules and decisions.  Despite this, LECs like the Defendants continue to assess tariffed switched access charges on Sprint in violation of law, and in breach of their interstate and/or intrastate access tariffs.

8.      Defendants' illegal and improper billings on intraMTA calls have caused Sprint millions of dollars in damages in violation of the Defendants' interstate and intrastate access tariffs, and the federal Communications Act.  Sprint seeks to obtain money damages as well as its reasonable attorneys' fees and costs incurred in prosecuting this action.

## PARTIES

9.      Sprint is a Delaware limited partnership.  Sprint's general and limited partners and their place of incorporation are as follows:  US Telcom, Inc. is a Kansas corporation with its principal place of business in Kansas; UCOM, Inc. is a Missouri Corporation with its principal place of business in Kansas; Utelcom, Inc. is a Kansas Corporation with its principal place of business in Kansas; and, Sprint International Communications Corporation is a Delaware

3

corporation with its principal place of business in Kansas.   At all times relevant, Sprint is and

has been qualified and registered to do business in the state of Missouri.

10.     Defendant Southwestern Bell Telephone Company ("Southwestern Bell") is a

corporation organized under the laws of Delaware with its principal offices located at 208 S.

Akard Street, Dallas, Texas 75202.  Southwestern Bell is a LEC which: (a) at all times relevant,

is and has been qualified and registered to do business in the state of Missouri; (b) conducts

operations in Missouri; and (c) maintains a registered agent for the service of process at CT

Corporation System, 120 South Central Ave, Clayton, Missouri 63105, located in St. Louis

County, Missouri.  Southwestern Bell billed Sprint interstate and intrastate switched access

charges on calls not subject to such charges for calls that originated in and/or terminated in the

states of Missouri, Arkansas, Kansas, Oklahoma and Texas.

11.     Defendant Big River Telephone Company, LLC ("Big River") is a limited

liability company organized under the laws of Delaware with its principal offices located at 24 S.

Minnesota Avenue, Cape Girardeau, Missouri 63702.  Big River is a LEC which: (a) at all times

relevant, is and has been qualified and registered to do business in the state of Missouri; and (b)

conducts operations in Missouri.  Big River billed Sprint interstate and intrastate switched access

charges on calls not subject to such charges for calls that originated in and/or terminated in the

states of Missouri, California, Illinois, Kansas and Kentucky.

12.     Defendant Chariton Valley Telephone Corporation ("Chariton Valley

Telephone") is a corporation organized under the laws of Missouri with its principal offices

located at 1213 E. Briggs Drive, Macon, Missouri 63552.  Chariton is a LEC which: (a) at all

times relevant, is and has been qualified and registered to do business in the state of Missouri;

and (b) conducts operations in Missouri.  Chariton billed Sprint interstate and intrastate switched

access charges on calls not subject to such charges for calls that originated in and/or terminated in the state of Missouri.

13.     Defendant MCI Metro Access Transmission Services LLC ("MCIMetro") is a limited liability company organized under the laws of Delaware with its principal offices located at 1 Verizon Way, Basking Ridge, New Jersey 07920.  MCIMetro is a LEC which: (a) at all times relevant, is and has been qualified and registered to do business in the state of Missouri; (b) conducts operations in Missouri; and (c) maintains a registered agent for the service of process at CT Corporation System, 120 South Central Ave, Clayton, Missouri 63105, located in St. Louis County, Missouri.  MCIMetro billed Sprint interstate and intrastate switched access charges on calls not subject to such charges for calls that originated in and/or terminated in the states of Missouri, Arizona, California, Colorado, Connecticut, Florida, Georgia, Illinois, Indiana, Kentucky, Massachusetts, Maryland, Michigan, Minnesota, New Jersey, New York, Pennsylvania, Rhode Island, Tennessee and Texas.

14.     Defendant MCI Communications Services, Inc. ("MCI Communications") is a corporation organized under the laws of Delaware with its principal offices located at 1 Verizon Way, Basking Ridge, New Jersey 07920.  MCI Communications is a LEC which: (a) at all times relevant, is and has been qualified and registered to do business in the state of Missouri; (b) conducts operations in Missouri; and (c) maintains a registered agent for the service of process at CT Corporation System, 120 South Central Ave, Clayton Missouri 63105, located in St. Louis County, Missouri.  MCI Communications billed Sprint interstate and intrastate switched access charges on calls not subject to such charges for calls that originated in and/or terminated in the states of Missouri, California, Florida, Georgia, Illinois, Indiana, Kentucky, Maryland, Massachusetts, Michigan, New Jersey, New York, Pennsylvania and Texas.

15.     Defendant Fidelity Telephone Company ("Fidelity Telephone") is a corporation organized under the laws of Missouri with its principal offices located at 64 North Clark, Sullivan, Missouri 63080.  Fidelity Telephone is a LEC which: (a) at all times relevant, is and has been qualified and registered to do business in the state of Missouri; and (b) conducts operations in Missouri.  Fidelity Telephone billed Sprint interstate and intrastate switched access charges on calls not subject to such charges for calls that originated in and/or terminated in the state of Missouri.

16.     Defendant Surewest Kansas, Inc. ("Surewest") is a corporation organized under the laws of Delaware with its principal offices located at 121 S. 17th Street, Mattoon, Illinois 61938.  Surewest is a LEC which: (a) at all times relevant, is and has been qualified and registered to do business in the state of Missouri; (b) conducts operations in Missouri; and (c) maintains a registered agent for the service of process at National Registered Agents, Inc., 120 South Central Ave, Clayton, Missouri 63105, located in St. Louis County, Missouri.  Surewest billed Sprint interstate and intrastate switched access charges on calls not subject to such charges for calls that originated in and/or terminated in the states of Missouri and Kansas.

17.     Defendant Ellington Telephone Company ("Ellington") is a corporation organized under the laws of Missouri with its principal offices located at 200 College Avenue, Ellington, Missouri 63638.  Ellington is a LEC which: (a) at all times relevant, is and has been qualified and registered to do business in the state of Missouri; and (b) conducts operations in Missouri. Ellington billed Sprint interstate and intrastate switched access charges on calls not subject to such charges for calls that originated in and/or terminated in the state of Missouri.

18.     Defendant Fairpoint Communications Missouri, Inc. ("Fairpoint Missouri") is a corporation organized under the laws of Missouri with its principal offices located at 521 E.

Morehead Street, Suite 500, Charlotte, North Carolina 28202.  Fairpoint Missouri is a LEC

which: (a) at all times relevant, is and has been qualified and registered to do business in the state

of Missouri; (b) conducts operations in Missouri; and (c) maintains a registered agent for the

service of process at CT Corporation System, 120 South Central Ave, Clayton, Missouri 63105,

located in St. Louis County, Missouri.  Fairpoint Missouri billed Sprint interstate and intrastate

switched access charges on calls not subject to such charges for calls that originated in and/or

terminated in the state of Missouri.

   19. Defendant Mark Twain Communications Company ("Mark Twain

Communications") is a corporation organized under the laws of Missouri with its principal

offices located at Highway 6 East, Hurdland, Missouri 63547.  Mark Twain Communications is a

LEC which: (a) at all times relevant, is and has been qualified and registered to do business in

the state of Missouri; and (b) conducts operations in Missouri.  Mark Twain Communications

billed Sprint interstate and intrastate switched access charges on calls not subject to such charges

for calls that originated in and/or terminated in the state of Missouri.

   20. Defendant Mark Twain Rural Telephone Company ("Mark Twain Rural") is a

corporation organized under the laws of Missouri with its principal offices located at Highway 6

East, Hurdland, Missouri 63547.  Mark Twain Rural is a LEC which: (a) at all times relevant, is

and has been qualified and registered to do business in the state of Missouri; and (b) conducts

operations in Missouri.  Mark Twain Rural billed Sprint interstate and intrastate switched access

charges on calls not subject to such charges for calls that originated in and/or terminated in the

state of Missouri.

   21. Defendant Steelville Telephone Exchange, Inc. ("Steelville Telephone") is a

corporation organized under the laws of Missouri with its principal offices located at 61 E.

Highway 8, Steelville, Missouri 65565.  Steelville Telephone is a LEC which: (a) at all times

relevant, is and has been qualified and registered to do business in the state of Missouri; and (b)

conducts operations in Missouri.  Steelville Telephone billed Sprint interstate and intrastate

switched access charges on calls not subject to such charges for calls that originated in and/or

terminated in the state of Missouri.

22.      Defendant Windstream Missouri, Inc. ("Windstream Missouri") is a corporation

organized under the laws of Missouri with its principal offices located at 4001R, Little Rock,

Arkansas 72212.  Windstream Missouri is a LEC which: (a) at all times relevant, is and has been

qualified and registered to do business in the state of Missouri; (b) conducts operations in

Missouri; and (c) maintains a registered agent for the service of process at CT Corporation

System, 120 South Central Ave, Clayton, Missouri 63105, located in St. Louis County, Missouri.

Windstream Missouri billed Sprint interstate and intrastate switched access charges on calls not

subject to such charges for calls that originated in and/or terminated in the state of Missouri.

## JURISDICTION AND VENUE

23.      This Court has personal jurisdiction over each of the Defendants as they each

conduct or have conducted continuous, systematic and routine business within the state of

Missouri.  Each of the Defendants billed Sprint switched access charges improperly on

intraMTA calls that originated and terminated within the state of Missouri and therefore caused

injury within the state of Missouri.

24.      This Court has original jurisdiction over the parties to this action pursuant to 28

U.S.C. §§ 1331 and 47 U.S.C. §§ 206 and 207, because several of Sprint's claims arise under the

Communications Act of 1934, a law of the United States.  Specifically, the Court has jurisdiction

8

pursuant to these provisions because Defendants billed Sprint improperly on intraMTA calls pursuant to their interstate access tariffs and those practices violate the Communications Act.

25.     Defendants also billed Sprint improperly on intraMTA calls pursuant to their intrastate access tariffs filed with public utilities commissions under state law.  The Court has supplemental jurisdiction over these pendent state law claims pursuant to 28 U.S.C. § 1367(a).

26.     This Court also has jurisdiction over Sprint's requests for declaratory relief under 28 U.S.C. §§ 2201 and 2202.

27.     Venue is proper in this judicial district under 28 U.S.C. § 1391.  Defendants have each conducted and continue to conduct business in one or more counties located in the Eastern District of Missouri, are subject to personal jurisdiction in the Eastern District of Missouri, and therefore "reside" in the Eastern District of Missouri within the meaning of 28 U.S.C. § 1391(b) and (c).

28.     Venue is also proper in this judicial district under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims alleged herein occurred in counties located in the Eastern District of Missouri.

29.     Venue is proper in the Eastern Division of Missouri because one or more of the Defendants reside in St. Louis County, which is in the Eastern Division.

## DEFENDANTS' CONDUCT CONCERNING INTRAMTA CALLS

### A.     IntraMTA Calls Are Never Subject To Switched Access Charges

30.     IntraMTA calls may originate and terminate in the same state ("intrastate") or different states ("interstate").  All Defendants billed Sprint improperly out of their intrastate access tariffs, and most billed Sprint improperly under their interstate access tariffs as well.

31.     CMRS calls can be exchanged directly between CMRS carriers and LECs (such as the Defendants), or indirectly, meaning the call traverses the network of an intermediate carrier (such as Sprint).

32.     When one of the Defendants hands calls to Sprint for ultimate delivery to a CMRS carrier ("CMRS terminating"), or when CMRS carriers hand calls to Sprint for ultimate delivery to one of the Defendants ("CMRS originating"), Sprint generally carries the calls over what are known as Feature Group D trunks.

33.     In 1996, the FCC promulgated rules that stated "Telecommunications traffic exchanged between a LEC and a CMRS provider that, at the beginning of the call, originates and terminates within the same Major Trading Area" is intraMTA and subject to reciprocal compensation, not access charges.  47 C.F.R. § 51.701(b)(2) (1996).  On December 29, 2011, the rule was modified to state that "[t]elecommunications traffic exchanged between a LEC and a CMRS provider that, at the beginning of the call, originates and terminates within the same Major Trading Area" (*i.e.,* intraMTA traffic) was "non-access traffic."  *Id*. (2011).

34.     From 2001 to December 29, 2011, "Telecommunications traffic" was defined in relevant part as that exchanged between a LEC and a CMRS provider that "originates and terminates within the same Major Trading Area…."  47 C.F.R. § 51.701(b)(2) (2001).  In 2011, the FCC modified this rule slightly to instead define the term to be "Non-Access Telecommunications Traffic."  *Id*. (2011).

35.     In 1996, FCC rules also stated a "LEC may not assess charges on any other telecommunications carrier for local telecommunications traffic that originates on the LEC's network." 47 C.F.R. § 51.703(b) (1996).  In 2001, the FCC amended the rule to omit the word "local," so that the rule read: a "LEC may not assess charges on any other telecommunications

carrier for telecommunications traffic that originates on the LEC's network." 47 C.F.R. §

51.703(b) (2001).  In 2011, that rule was modified slightly to state that a "LEC may not assess

charges on any other telecommunications carrier for Non-Access Telecommunications Traffic

that originates on the LEC's network."  *Id.* (2011).

      36.     In 1996, the FCC also issued its "First Report and Order" implementing the local

competition provisions in the Telecommunications Act of 1996.  In that voluminous decision, the

FCC stated:

> 1034. We conclude that section 251(b)(5) reciprocal compensation obligations
> should apply only to traffic that originates and terminates within a local area, as
> defined in the following paragraph.  We disagree with Frontier's contention that
> section 251(b)(5) entitles an IXC to receive reciprocal compensation from a LEC
> when a long-distance call is passed from the LEC serving the caller to the IXC.
> Access charges were developed to address a situation in which three carriers --
> typically, the originating LEC, the IXC, and the terminating LEC -- collaborate to
> complete a long-distance call. As a general matter, in the access charge regime,
> the long-distance caller pays long-distance charges to the IXC, and the IXC must
> pay both LECs for originating and terminating access service. . . .

> 1035. With the exception of traffic to or from a CMRS network, state
> commissions have the authority to determine what geographic areas should be
> considered "local areas" for the purpose of applying reciprocal compensation
> obligations under section 251(b)(5), consistent with the state commissions'
> historical practice of defining local service areas for wireline LECs. . . .

> 1036. On the other hand, in light of this Commission's exclusive authority to
> define the authorized license areas of wireless carriers, we will define the local
> service area for calls to or from a CMRS network for the purposes of applying
> reciprocal compensation obligations under section 251(b)(5). Different types of
> wireless carriers have different FCC-authorized licensed territories, the largest of
> which is the "Major Trading Area" (MTA). Because wireless licensed territories
> are federally authorized, and vary in size, we conclude that the largest FCC-
> authorized wireless license territory (*i.e.*, MTA) serves as the most appropriate
> definition for local service area for CMRS traffic for purposes of reciprocal
> compensation under section 251(b)(5) as it avoids creating artificial distinctions
> between CMRS providers. Accordingly, traffic to or from a CMRS network that
> originates and terminates within the same MTA is subject to transport and
> termination rates under section 251(b)(5), rather than interstate and intrastate
> access charges.

*In re Implementation of the Local Competition Provisions of the Telecomms. Act of 1996*, 11 FCC Rcd 15499 ¶¶ 1034-1036 (1996) ("*First Report and Order*") (*subsequent history omitted*), (footnotes omitted).

37.     Federal courts have uniformly held that, irrespective of whether CMRS originating or CMRS terminating calls traverse an intermediate carrier, and irrespective of whether the same calls are transported over a Feature Group D facility, the aforementioned rules apply, and intraMTA calls are never subject to switched access charges.  *See, e.g., Iowa Network Servs., Inc. v. Qwest Corp.,* 466 F.3d 1091 (8th Cir. 2006); *Alma Commc'ns Co. v. Missouri Pub. Serv. Comm'n,* 490 F.3d 619 (8th Cir. 2007).

38.     In November 2011, the FCC issued its *Connect America* decision, *In re Connect America Fund*, 26 FCC Rcd 17663 (2011) (Report and Order and Notice of Further Rulemaking, "*Connect America*"), *final rules published*, 76 Fed. Reg. 73830 (Nov. 29, 2011), *recon. in part,* 2011 WL 6778613 (Dec. 23, 2011) (subsequent history omitted), and the FCC reiterated that intraMTA traffic is not subject to switched access charges, irrespective of whether the call is carried by an intermediate IXC.  Specifically:

> 1003.  In the *Local Competition First Report and Order*, the Commission stated that calls between a LEC and a CMRS provider that originate and terminate within the same Major Trading Area (MTA) at the time that the call is initiated are subject to reciprocal compensation obligations under section 251(b)(5), rather than interstate or intrastate access charges. . . .

> 1004.  The record presents several issues regarding the scope and interpretation of the intraMTA rule. Because the changes we adopt in this Order maintain, during the transition, distinctions in the compensation available under the reciprocal compensation regime and compensation owed under the access regime, parties must continue to rely on the intraMTA rule to define the scope of LEC-CMRS traffic that falls under the reciprocal compensation regime. ***We therefore take this opportunity to remove any ambiguity regarding the interpretation of the intraMTA rule.***

> ***

12

1007.  In a further pending dispute, some LECs have argued that if completing a call to a CMRS provider requires a LEC to route the call to an intermediary carrier outside the LEC's local calling area,[FN2129] the call is subject to access charges, not reciprocal compensation, even if the call originates and terminates within the same MTA. One commenter in this proceeding asks us to affirm that such traffic is subject to reciprocal compensation. ***We therefore clarify that the intraMTA rule means that all traffic exchanged between a LEC and a CMRS provider that originates and terminates within the same MTA, as determined at the time the call is initiated, is subject to reciprocal compensation regardless of whether or not the call is, prior to termination, routed to a point located outside that MTA or outside the local calling area of the LEC***.[FN2132] ***Similarly, intraMTA traffic is subject to reciprocal compensation regardless of whether the two end carriers are directly connected or exchange traffic indirectly via a transit carrier.***[FN2133]

FN2129.  This occurs when the LEC and CMRS provider are "indirectly interconnected," i.e. when there is a third carrier to which they both have direct connections, and which is then used as a conduit for the exchange of traffic between them.

FN2132. . . . We find that the potential implementation issues raised by Vantage Point do not warrant a different construction of the intraMTA rule than what we adopt above. Although Vantage Point questions whether the intraMTA rule is feasible when a call is routed through interexchange carriers, many incumbent LECs have already, pursuant to state commission and appellate court decisions, extended reciprocal compensation arrangements with CMRS providers to intraMTA traffic without regard to whether a call is routed through interexchange carriers. *See, e.g., Alma Communications Co. v. Missouri Public Service Comm'n*, 490 F.3d 619, 623-34 (8th Cir. 2007) (noting and affirming arbitration decision requiring incumbent LEC to compensate CMRS provider for costs incurred in transporting and terminating land-line to cell-phone calls placed to cell phones within the same MTA, even if those calls were routed through a long-distance carrier); *Atlas Telephone Co. v. Oklahoma Corp. Comm'n*, 400 F.3d 1256 (10th Cir. 2005). Further, while Vantage Point asserts that it is not currently possible to determine if a call is interMTA or intraMTA, Vantage Point Oct. 21, 2011 Ex Parte Letter at 2-3, the Commission addressed this concern when it adopted the rule. *See Local Competition First Report and Order*, 11 FCC Rcd at 16017, para. 1044 (stating that parties may calculate overall compensation amounts by extrapolating from traffic studies and samples).

FN2133. *See* Sprint Nextel Section XV Comments at 22-23 (arguing that the Commission should reaffirm that all intraMTA traffic to or from a

> CMRS provider is subject to reciprocal compensation). ***This clarification is consistent with how the intraMTA rule has been interpreted by the federal appellate courts***. *See Alma Communications Co. v. Missouri Public Service Comm'n*, 490 F.3d 619 (8th Cir. 2007); *Iowa Network Services, Inc. v. Qwest Corp.,* 466 F.3d 1091 (8th Cir. 2006); *Atlas Telephone Co. v. Oklahoma Corp. Commission,* 400 F.3d 1256 (10th Cir. 2005).

*Connect America* ¶¶ 1003-1007 (emphasis added) (certain footnotes omitted).

39.     Given the FCC rules and decisions as well as the federal court decisions, liability on each of Sprint's claims presents an identical question of law, and none of the legal issues or related claims should require unique or individualized proof to establish liability.

**B.**     **Defendants Improperly Billed Sprint Switched Access Charges On IntraMTA Calls.**

40.     At all relevant times, all Defendants had interstate access tariffs on file with the FCC.  These Defendants billed Sprint originating and/or terminating switched access charges on intraMTA calls from their interstate tariffs in violation of law.

41.     At all relevant times, all Defendants had intrastate access tariffs on file with the Missouri Public Service Commission.  Defendants billed Sprint originating and/or terminating switched access charges on intraMTA calls from their Missouri tariffs in violation of law.

42.     At all relevant times, Defendant MCIMetro had intrastate access tariffs on file with the Arizona Corporation Commission, the California Public Utilities Commission, the Colorado Public Utilities Commission, the Connecticut Department of Public Utility Control, the Florida Public Service Commission, the Georgia Public Service Commission, the Illinois Commerce Commission, the Indiana Utility Regulatory Commission, the Kentucky Public Service Commission, the Massachusetts Department of Telecom. & Cable, the Maryland Public Service Commission, the Michigan Public Service Commission, the Minnesota Public Utilities Commission, the New Jersey Board of Public Utilities, the New York State Public Service

14

Commission, the Pennsylvania Public Utility Commission, the Rhode Island Public Utilities Commission, the Tennessee Regulatory Authority and the Texas Public Utility Commission. MCIMetro billed Sprint originating and/or terminating switched access charges on intraMTA calls from these tariffs in violation of law.

43.    At all relevant times, Defendant MCI Communications had intrastate access tariffs on file with the California Commission, the Florida Commission, the Georgia Commission, the Illinois Commission, the Indiana Commission, the Kentucky Commission, the Maryland Commission, the Massachusetts Commission, the Michigan Commission, the New Jersey Board, the New York Commission, the Pennsylvania Commission and the Texas Commission.  MCI Communications billed Sprint originating and/or terminating switched access charges on intraMTA calls from these tariffs in violation of law.

44.    At all relevant times, Defendant Southwestern Bell had intrastate access tariffs on file with the Arkansas Public Service Commission, the Kansas State Corporation Commission, the Oklahoma Corporation Commission and the Texas Commission.  Southwestern Bell billed Sprint originating and/or terminating switched access charges on intraMTA calls from these tariffs in violation of law.

45.    At all relevant times, Defendant Surewest had an intrastate access tariff on file with the Kansas Commission.  Surewest billed Sprint originating and/or terminating switched access charges on intraMTA calls from this tariff in violation of law.

46.    None of the Defendants have a negotiated contract with Sprint for access related services that would limit or bar Sprint's claims.

47.    These improper billings have caused Sprint millions of dollars in damages, and continue to generate additional damages.

15

## COUNT I

### 47 U.S.C. §§ 206, 207 Claim for Violation of 47 U.S.C. § 201(b)
### (Interstate IntraMTA Calling)
### (All Defendants)

48.     Sprint repeats and realleges each and every allegation of paragraphs 1 through 47
above, and incorporates them by reference as though fully set forth herein.

49.     Defendants are common carriers and have each engaged in an unjust and
unreasonable practice in connection with their duties as common carriers under Section 201(b),
namely: Defendants each improperly billed Sprint originating and terminating switched access
charges from their interstate tariffs on interstate, intraMTA calls.

50.     The FCC's rules and decisions, as affirmed by federal courts, make plain that the
filed interstate access tariffs of each Defendant do not provide these entities with a basis to
charge or collect interstate access charges from Sprint on intraMTA traffic.

51.     The FCC has stated in its rules, and in many decisions, that a LEC engages in an
unjust and unreasonable practice under Section 201(b) when it (a) bills an interexchange carrier
for tariffed access charges without a basis to do so under its tariff (*see, e.g., Qwest Commc'ns
Corp. v. Farmers and Merchs. Mut. Tel. Co.,* 24 FCC Rcd 14801 (2009), *aff'd sub nom.,
Farmers and Merchs. Mut. Tel. of Wayland v. FCC,* 668 F.3d 714 (D. C. Cir. 2011); *AT&T
Corp. v. All Am. Tel. Co.,* 28 FCC Rcd 3477 (2013)) or (b) charges a carrier for intraMTA
CMRS traffic from the LEC's network.  *See, e.g., In re TSR Wireless, LLC v. US WEST
Commc'ns,* 15 FCC Rcd. 11166 ¶ 29 (2000); 47 C.F.R. §§ 51.701, 51.703.

52.     Each of the Defendants therefore engaged in an unjust and unreasonable practice
in connection with its respective provision of interstate communication services, in violation of
its common carrier obligations.

16

53.     Defendants' violations of Section 201(b) have caused Sprint to suffer actual and consequential economic damages in an amount that Sprint will prove at trial.  Sprint therefore has the right to sue for its actual damages resulting from each Defendant's violations of Section 201(b), pursuant to Sections 206 and 207 of Title 47 of the United States Code.  Pursuant to Section 206, Sprint also seeks its reasonable attorneys' fees and costs incurred in this litigation.

**COUNT II**
**47 U.S.C. §§ 206, 207 Claim for Violation of 47 U.S.C. § 203**
**(Interstate IntraMTA Calling)**
**(All Defendants)**

54.     Sprint repeats and realleges each and every allegation of paragraphs 1 through 53 above, and incorporates them by reference as though fully set forth herein.

55.     On information and belief, the Defendants' interstate access tariffs do not exempt intraMTA calls.  As a result, the interstate access tariffs conflict with FCC rules and are *ultra vires.  See, e.g., Iowa Network Servs. v. Qwest*, 385 F. Supp. 2d 850, 899-900 (S.D. Iowa 2005), *aff'd*, 466 F.3d 1091 (8th Cir. 2006).  *Cf., Paetec Commc'ns, Inc. v. MCI Commc'ns Serv., Inc.,* 712 F. Supp. 2d 405, 416-17 (E.D. Pa. 2010), *appeal dismissed; Paetec Commc'ns Inc. v. CommPartners, LLC*, 2010 WL 1767193, at *4-5 (D.D.C. Feb. 18, 2010), *appeal dismissed*; *Global NAPs v. FCC*, 247 F.3d 252, 260 (D.C. Cir. 2001) ("tariffs still must comply with the applicable statutory and regulatory requirements").  Defendants cannot bill or collect tariffed charges on the intraMTA traffic.

56.     Defendants' billing of charges that are *ultra vires* of the Communications Act violate Sections 203(a) and (c).

57.     Defendants' violations of Section 203 have caused Sprint to suffer actual and consequential economic damages in an amount that Sprint will prove at trial.  Sprint therefore

has the right to sue for its actual damages resulting from Defendants' respective violations of

Section 203, pursuant to Sections 206 and 207 of Title 47 of the United States Code. Pursuant to

Section 206, Sprint Communications also seeks its reasonable attorneys' fees and costs incurred

in this litigation.

## COUNT III
## Breach of Contract/Interstate IntraMTA Calling
### (All Defendants)

58.     Sprint repeats and realleges each and every allegation of paragraphs 1 through 57

above, and incorporates them by reference as though fully set forth herein.

59.     Defendants' interstate switched access tariffs constitute contracts between each of

the Defendants and any purchaser of services from those tariffs, which includes Sprint.

60.     Defendants are each charging Sprint switched access charges on interstate calls

that do not qualify for such charges, in violation of their respective interstate access tariffs.

61.     Each of the Defendants is in breach of its respective tariff provisions when it bills

Sprint for interstate calls as they do not qualify for such charges.  To the extent the tariffs purport

to allow such charges, they are unenforceable.

62.     As a direct and proximate result of each Defendant's conduct as alleged above,

Sprint has been damaged in an amount to be proven at trial.

## COUNT IV
## Breach of Contract/Intrastate IntraMTA Calling (Missouri)
### (All Defendants)

63.     Sprint repeats and realleges each and every allegation of paragraphs 1 through 63

above, and incorporates them by reference as though fully set forth herein.

18

64.     Defendants' intrastate switched access tariffs on file with the Missouri Commission constitute contracts between each of the Defendants and any purchaser of services from those tariffs, which includes Sprint.

65.     Defendants are each charging Sprint switched access charges on intraMTA calls that do not qualify for such charges, in violation of their respective Missouri intrastate access tariffs.  To the extent the tariffs purport to allow such charges, they are unenforceable.

66.     Each of the Defendants is in breach of its respective Missouri tariff provisions when they each bill Sprint for intraMTA calls as they do not qualify for such charges.

67.     As a direct and proximate result of each Defendant's conduct as alleged above, Sprint has been damaged in an amount to be proven at trial.

**COUNT V**

**Breach of Contract/Intrastate IntraMTA Calling (Arizona)**
**(Defendant MCIMetro)**

68.     Sprint repeats and realleges each and every allegation of paragraphs 1 through 67 above, and incorporates them by reference as though fully set forth herein.

69.     Defendant MCIMetro's intrastate switched access tariff on file with the Arizona Commission constitutes a contract between MCIMetro and any purchaser of services from that tariff, which includes Sprint.

70.     Defendant MCIMetro is charging Sprint switched access charges on intraMTA calls that do not qualify for such charges, in violation of its Arizona intrastate access tariff.  To the extent the tariff purports to allow such charges, they are unenforceable.

71.     Defendant MCIMetro is in breach of its Arizona tariff provisions when it bills Sprint for intraMTA calls as they do not qualify for such charges.

72.     As a direct and proximate result of Defendant MCIMetro's conduct as alleged above, Sprint has been damaged in an amount to be proven at trial.

## COUNT VI
### Breach of Contract/Intrastate IntraMTA Calling (Arkansas)
### (Defendant Southwestern Bell)

73.     Sprint repeats and realleges each and every allegation of paragraphs 1 through 72 above, and incorporates them by reference as though fully set forth herein.

74.     Defendant Southwestern Bell's intrastate switched access tariff on file with the Arkansas Commission constitutes a contract between Defendant MCIMetro and any purchaser of services from that tariff, which includes Sprint.

75.     Defendant Southwestern Bell is charging Sprint switched access charges on intraMTA calls that do not qualify for such charges, in violation of its Arkansas intrastate access tariff.  To the extent the tariff purports to allow such charges, they are unenforceable.

76.     Defendant Southwestern Bell is in breach of its Arkansas tariff provisions when it bills Sprint for intraMTA calls as they do not qualify for such charges.

77.     As a direct and proximate result of Defendant Southwestern Bell's conduct as alleged above, Sprint has been damaged in an amount to be proven at trial.

## COUNT VII
### Breach of Contract/Intrastate IntraMTA Calling (California)
### (Defendants Big River, MCIMetro and MCI Communications)

78.     Sprint repeats and realleges each and every allegation of paragraphs 1 through 77 above, and incorporates them by reference as though fully set forth herein.

20

79.     Defendants Big River, MCIMetro, MCI Communications' intrastate switched access tariffs on file with the California Commission constitute contracts between Defendants Big River, MCIMetro and MCI Communications respectively, and any purchaser of services from those respective tariffs, which includes Sprint.

80.     Defendants Big River, MCIMetro  and MCI Communications are each charging Sprint switched access charges on intraMTA calls that do not qualify for such charges, in violation of their respective California intrastate access tariffs.  To the extent the tariffs purport to allow such charges, they are unenforceable.

81.     Defendants Big River, MCIMetro and MCI Communications are each in breach of their respective California tariff provisions when they each bill Sprint for intraMTA calls as they do not qualify for such charges.

82.     As a direct and proximate result of Defendants Big River, MCIMetro and MCI Communications' respective conduct as alleged above, Sprint has been damaged in an amount to be proven at trial.

## COUNT VIII
### Breach of Contract/Intrastate IntraMTA Calling (Colorado)
### (Defendant MCIMetro)

83.     Sprint repeats and realleges each and every allegation of paragraphs 1 through 82 above, and incorporates them by reference as though fully set forth herein.

84.     Defendant MCIMetro's intrastate switched access tariff on file with the Colorado Commission constitutes a contract between MCIMetro and any purchaser of services from that tariff, which includes Sprint.

85.     Defendant MCIMetro is charging Sprint switched access charges on intraMTA calls that do not qualify for such charges, in violation of its Colorado intrastate access tariff.  To the extent the tariff purports to allow such charges, they are unenforceable.

86.     Defendant MCIMetro is in breach of its Colorado tariff provisions when it bills Sprint for intraMTA calls as they do not qualify for such charges.

87.     As a direct and proximate result of Defendant MCIMetro's conduct as alleged above, Sprint has been damaged in an amount to be proven at trial.

**COUNT IX**
**Breach of Contract/Intrastate IntraMTA Calling (Connecticut)**
**(Defendant MCIMetro)**

88.     Sprint repeats and realleges each and every allegation of paragraphs 1 through 87 above, and incorporates them by reference as though fully set forth herein.

89.     Defendant MCIMetro's intrastate switched access tariff on file with the Connecticut Department of Public Utility Control constitutes a contract between MCIMetro and any purchaser of services from that tariff, which includes Sprint.

90.     Defendant MCIMetro is charging Sprint switched access charges on intraMTA calls that do not qualify for such charges, in violation of its Connecticut intrastate access tariff. To the extent the tariff purports to allow such charges, they are unenforceable.

91.     Defendant MCIMetro is in breach of its Connecticut tariff provisions when it bills Sprint for intraMTA calls as they do not qualify for such charges.

92.     As a direct and proximate result of Defendant MCIMetro's conduct as alleged above, Sprint has been damaged in an amount to be proven at trial.

## COUNT X

### Breach of Contract/Intrastate IntraMTA Calling (Florida)
**(Defendants MCIMetro and MCI Communications)**

93.     Sprint repeats and realleges each and every allegation of paragraphs 1 through 92 above, and incorporates them by reference as though fully set forth herein.

94.     Defendants MCIMetro and MCI Communications' intrastate switched access tariffs on file with the Florida Commission constitute contracts between Defendants MCIMetro and MCI Communications respectively, and any purchaser of services from those respective tariffs, which includes Sprint.

95.     Defendants MCIMetro and MCI Communications are each charging Sprint switched access charges on intraMTA calls that do not qualify for such charges, in violation of their respective Florida intrastate access tariffs.  To the extent the tariffs purport to allow such charges, they are unenforceable.

96.     Defendants MCIMetro and MCI Communications are each in breach of their respective Florida tariff provisions when they each bill Sprint for intraMTA calls as they do not qualify for such charges.

97.     As a direct and proximate result of Defendants MCIMetro and MCI Communications' respective conduct as alleged above, Sprint has been damaged in an amount to be proven at trial.

## COUNT XI

### Breach of Contract/Intrastate IntraMTA Calling (Georgia)
**(Defendants MCIMetro and MCI Communications)**

98.     Sprint repeats and realleges each and every allegation of paragraphs 1 through 97 above, and incorporates them by reference as though fully set forth herein.

23

99.     Defendants MCIMetro and MCI Communications' intrastate switched access tariffs on file with the Georgia Commission constitute contracts between Defendants MCIMetro and MCI Communications respectively, and any purchaser of services from those respective tariffs, which includes Sprint.

100.     Defendants MCIMetro and MCI Communications are each charging Sprint switched access charges on intraMTA calls that do not qualify for such charges, in violation of their respective Georgia intrastate access tariffs.  To the extent the tariffs purport to allow such charges, they are unenforceable.

101.     Defendants MCIMetro and MCI Communications are each in breach of their respective Georgia tariff provisions when they each bill Sprint for intraMTA calls as they do not qualify for such charges.

102.     As a direct and proximate result of Defendants MCIMetro and MCI Communications' respective conduct as alleged above, Sprint has been damaged in an amount to be proven at trial.

## COUNT XII
### Breach of Contract/Intrastate IntraMTA Calling (Illinois)
### (Defendants Big River, MCIMetro and MCI Communications)

103.     Sprint repeats and realleges each and every allegation of paragraphs 1 through 102 above, and incorporates them by reference as though fully set forth herein.

104.     Defendants Big River, MCIMetro and MCI Communications' intrastate switched access tariffs on file with the Illinois Commission constitute contracts between Defendants Big River, MCIMetro and MCI Communications respectively, and any purchaser of services from those respective tariffs, which includes Sprint.

105.     Defendants Big River, MCIMetro and MCI Communications are each charging Sprint switched access charges on intraMTA calls that do not qualify for such charges, in violation of their respective Illinois intrastate access tariffs.  To the extent the tariffs purport to allow such charges, they are unenforceable.

106.     Defendants Big River, MCIMetro and MCI Communications are each in breach of their respective Illinois tariff provisions when they each bill Sprint for intraMTA calls as they do not qualify for such charges.

107.     As a direct and proximate result of Defendants Big River, MCIMetro and MCI Communications' respective conduct as alleged above, Sprint has been damaged in an amount to be proven at trial.


## COUNT XIII
## Breach of Contract/Intrastate IntraMTA Calling (Indiana)
### (Defendants MCIMetro and MCI Communications)

108.     Sprint repeats and realleges each and every allegation of paragraphs 1 through 107 above, and incorporates them by reference as though fully set forth herein.

109.     Defendants MCIMetro and MCI Communications' intrastate switched access tariffs on file with the Indiana Commission constitute contracts between Defendants MCIMetro and MCI Communications respectively, and any purchaser of services from those respective tariffs, which includes Sprint.

110.     Defendants MCIMetro and MCI Communications are each charging Sprint switched access charges on intraMTA calls that do not qualify for such charges, in violation of their respective Indiana intrastate access tariffs.  To the extent the tariffs purport to allow such charges, they are unenforceable.

25

111.     Defendants MCIMetro and MCI Communications are each in breach of their respective Indiana tariff provisions when they each bill Sprint for intraMTA calls as they do not qualify for such charges.

112.     As a direct and proximate result of Defendants MCIMetro and MCI Communications' respective conduct as alleged above, Sprint has been damaged in an amount to be proven at trial.

## COUNT XIV
## Breach of Contract/Intrastate IntraMTA Calling (Kansas)
### (Defendants Big River, Southwestern Bell and Surewest)

113.     Sprint repeats and realleges each and every allegation of paragraphs 1 through 112 above, and incorporates them by reference as though fully set forth herein.

114.     Defendants Big River, Southwestern Bell and Surewest's intrastate switched access tariffs on file with the Kansas Commission constitute contracts between Defendants Big River, MCIMetro, Southwestern Bell and Surewest respectively, and any purchaser of services from those respective tariffs, which includes Sprint.

115.     Defendants Big River, Southwestern Bell and Surewest are each charging Sprint switched access charges on intraMTA calls that do not qualify for such charges, in violation of their respective Kansas intrastate access tariffs.  To the extent the tariffs purport to allow such charges, they are unenforceable.

116.     Defendants Big River, Southwestern Bell and Surewest are each in breach of their respective Kansas tariff provisions when they each bill Sprint for intraMTA calls as they do not qualify for such charges.

26

117.     As a direct and proximate result of Defendants Big River, Southwestern Bell and Surewest's respective conduct as alleged above, Sprint has been damaged in an amount to be proven at trial.

**COUNT XV**

**Breach of Contract/Intrastate IntraMTA Calling (Kentucky)**
**(Defendants Big River, MCIMetro and MCI Communications)**

118.     Sprint repeats and realleges each and every allegation of paragraphs 1 through 117 above, and incorporates them by reference as though fully set forth herein.

119.     Defendants Big River, MCIMetro and MCI Communications' intrastate switched access tariffs on file with the Kentucky Commission constitute contracts between Defendants Big River, MCIMetro and MCI Communications respectively, and any purchaser of services from those respective tariffs, which includes Sprint.

120.     Defendants Big River, MCIMetro and MCI Communications are each charging Sprint switched access charges on intraMTA calls that do not qualify for such charges, in violation of their respective Kentucky intrastate access tariffs.  To the extent the tariffs purport to allow such charges, they are unenforceable.

121.     Defendants Big River, MCIMetro and MCI Communications are each in breach of their respective Kentucky tariff provisions when they each bill Sprint for intraMTA calls as they do not qualify for such charges.

122.     As a direct and proximate result of Defendants Big River, MCIMetro and MCI Communications' respective conduct as alleged above, Sprint has been damaged in an amount to be proven at trial.

## COUNT XVI
### Breach of Contract/Intrastate IntraMTA Calling (Maryland)
### (Defendants MCIMetro and MCI Communications)

123.    Sprint repeats and realleges each and every allegation of paragraphs 1 through 122 above, and incorporates them by reference as though fully set forth herein.

124.    Defendants MCIMetro and MCI Communications' intrastate switched access tariffs on file with the Maryland Commission constitute contracts between Defendants MCIMetro and MCI Communications respectively, and any purchaser of services from those respective tariffs, which includes Sprint.

125.    Defendants MCIMetro and MCI Communications are each charging Sprint switched access charges on intraMTA calls that do not qualify for such charges, in violation of their respective Maryland intrastate access tariffs.  To the extent the tariffs purport to allow such charges, they are unenforceable.

126.    Defendants MCIMetro and MCI Communications are each in breach of their respective Maryland tariff provisions when they each bill Sprint for intraMTA calls as they do not qualify for such charges.

127.    As a direct and proximate result of Defendants MCIMetro and MCI Communications' respective conduct as alleged above, Sprint has been damaged in an amount to be proven at trial.

## COUNT XVII
### Breach of Contract/Intrastate IntraMTA Calling (Massachusetts)
### (Defendants MCIMetro and MCI Communications)

128.    Sprint repeats and realleges each and every allegation of paragraphs 1 through 127 above, and incorporates them by reference as though fully set forth herein.

28

129.    Defendants MCIMetro and MCI Communications' intrastate switched access tariffs on file with the Massachusetts Department of Telecom. & Cable constitute contracts between Defendants MCIMetro and MCI Communications respectively, and any purchaser of services from those respective tariffs, which includes Sprint.

130.    Defendants MCIMetro and MCI Communications are each charging Sprint switched access charges on intraMTA calls that do not qualify for such charges, in violation of their respective Massachusetts intrastate access tariffs. To the extent the tariffs purport to allow such charges, they are unenforceable.

131.    Defendants MCIMetro and MCI Communications are each in breach of their respective Massachusetts tariff provisions when they each bill Sprint for intraMTA calls as they do not qualify for such charges.

132.    As a direct and proximate result of Defendants MCIMetro and MCI Communications' respective conduct as alleged above, Sprint has been damaged in an amount to be proven at trial.


## COUNT XVIII
### Breach of Contract/Intrastate IntraMTA Calling (Michigan)
### (Defendants MCIMetro and MCI Communications)

133.    Sprint repeats and realleges each and every allegation of paragraphs 1 through 132 above, and incorporates them by reference as though fully set forth herein.

134.    Defendants MCIMetro and MCI Communications' intrastate switched access tariffs on file with the Michigan Commission constitute contracts between Defendants MCIMetro and MCI Communications respectively, and any purchaser of services from those respective tariffs, which includes Sprint.

135.    Defendants MCIMetro and MCI Communications are each charging Sprint switched access charges on intraMTA calls that do not qualify for such charges, in violation of their respective Michigan intrastate access tariffs.  To the extent the tariffs purport to allow such charges, they are unenforceable.

136.    Defendants MCIMetro and MCI Communications are each in breach of their respective Michigan tariff provisions when they each bill Sprint for intraMTA calls as they do not qualify for such charges.

137.    As a direct and proximate result of Defendants MCIMetro and MCI Communications' respective conduct as alleged above, Sprint has been damaged in an amount to be proven at trial.

<h3 style="text-align:center">COUNT XIX</h3>
<h3 style="text-align:center">Breach of Contract/Intrastate IntraMTA Calling (Minnesota)</h3>
<h3 style="text-align:center">(Defendant MCIMetro)</h3>

138.    Sprint repeats and realleges each and every allegation of paragraphs 1 through 137 above, and incorporates them by reference as though fully set forth herein.

139.    Defendant MCIMetro's intrastate switched access tariff on file with the Minnesota Commission constitutes a contract between MCIMetro and any purchaser of services from that tariff, which includes Sprint.

140.    Defendant MCIMetro is charging Sprint switched access charges on intraMTA calls that do not qualify for such charges, in violation of its Minnesota intrastate access tariff.  To the extent the tariff purports to allow such charges, they are unenforceable.

141.    Defendant MCIMetro is in breach of its Minnesota tariff provisions when it bills Sprint for intraMTA calls as they do not qualify for such charges.

142.     As a direct and proximate result of Defendant MCIMetro's conduct as alleged above, Sprint has been damaged in an amount to be proven at trial.

## COUNT XX
### Breach of Contract/Intrastate IntraMTA Calling (New Jersey)
### (Defendants MCIMetro and MCI Communications)

143.     Sprint repeats and realleges each and every allegation of paragraphs 1 through 142 above, and incorporates them by reference as though fully set forth herein.

144.     Defendants MCIMetro and MCI Communications' intrastate switched access tariffs on file with the New Jersey Board constitute contracts between Defendants MCIMetro and MCI Communications respectively, and any purchaser of services from those respective tariffs, which includes Sprint.

145.     Defendants MCIMetro and MCI Communications are each charging Sprint switched access charges on intraMTA calls that do not qualify for such charges, in violation of their respective New Jersey intrastate access tariffs.  To the extent the tariffs purport to allow such charges, they are unenforceable.

146.     Defendants MCIMetro and MCI Communications are each in breach of their respective New Jersey tariff provisions when they each bill Sprint for intraMTA calls as they do not qualify for such charges.

147.     As a direct and proximate result of Defendants MCIMetro and MCI Communications' respective conduct as alleged above, Sprint has been damaged in an amount to be proven at trial.

31

**COUNT XXI**

**Breach of Contract/Intrastate IntraMTA Calling (New York)**
**(Defendants MCIMetro and MCI Communications)**

148.    Sprint repeats and realleges each and every allegation of paragraphs 1 through 147 above, and incorporates them by reference as though fully set forth herein.

149.    Defendants MCIMetro and MCI Communications' intrastate switched access tariffs on file with the New York Commission constitute contracts between Defendants MCIMetro and MCI Communications respectively, and any purchaser of services from those respective tariffs, which includes Sprint.

150.    Defendants MCIMetro and MCI Communications are each charging Sprint switched access charges on intraMTA calls that do not qualify for such charges, in violation of their respective New York intrastate access tariffs.  To the extent the tariffs purport to allow such charges, they are unenforceable.

151.    Defendants MCIMetro and MCI Communications are each in breach of their respective New York tariff provisions when they each bill Sprint for intraMTA calls as they do not qualify for such charges.

152.    As a direct and proximate result of Defendants MCIMetro and MCI Communications' respective conduct as alleged above, Sprint has been damaged in an amount to be proven at trial.

**COUNT XXII**

**Breach of Contract/Intrastate IntraMTA Calling (Oklahoma)**
**(Defendant Southwestern Bell)**

153.    Sprint repeats and realleges each and every allegation of paragraphs 1 through 152 above, and incorporates them by reference as though fully set forth herein.

32

154.    Defendant Southwestern Bell's intrastate switched access tariff on file with the Oklahoma Commission constitutes a contract between Defendant Southwestern Bell and any purchaser of services from that tariff, which includes Sprint.

155.    Defendant Southwestern Bell is charging Sprint switched access charges on intraMTA calls that do not qualify for such charges, in violation of its Oklahoma intrastate access tariff.  To the extent the tariff purports to allow such charges, they are unenforceable.

156.    Defendant Southwestern Bell is in breach of its Oklahoma tariff provisions when they each bill Sprint for intraMTA calls as they do not qualify for such charges.

157.    As a direct and proximate result of MCIMetro and Southwestern Bell's respective conduct as alleged above, Sprint has been damaged in an amount to be proven at trial.

## COUNT XXIII
## Breach of Contract/Intrastate IntraMTA Calling (Pennsylvania)
### (Defendants MCIMetro and MCI Communications)

158.    Sprint repeats and realleges each and every allegation of paragraphs 1 through 157 above, and incorporates them by reference as though fully set forth herein.

159.    Defendants MCIMetro and MCI Communications' intrastate switched access tariffs on file with the Pennsylvania Commission constitute contracts between Defendants MCIMetro and MCI Communications respectively, and any purchaser of services from those respective tariffs, which includes Sprint.

160.    Defendants MCIMetro and MCI Communications are each charging Sprint switched access charges on intraMTA calls that do not qualify for such charges, in violation of their respective Pennsylvania intrastate access tariffs.  To the extent the tariffs purport to allow such charges, they are unenforceable.

161.    Defendants MCIMetro and MCI Communications are each in breach of their respective Pennsylvania tariff provisions when they each bill Sprint for intraMTA calls as they do not qualify for such charges.

162.    As a direct and proximate result of Defendants MCIMetro and MCI Communications' respective conduct as alleged above, Sprint has been damaged in an amount to be proven at trial.

## COUNT XXIV
### Breach of Contract/Intrastate IntraMTA Calling (Rhode Island)
### (Defendant MCIMetro)

163.    Sprint repeats and realleges each and every allegation of paragraphs 1 through 162 above, and incorporates them by reference as though fully set forth herein.

164.    Defendant MCIMetro's intrastate switched access tariff on file with the Rhode Island Commission constitutes a contract between MCIMetro and any purchaser of services from that tariff, which includes Sprint.

165.    Defendant MCIMetro is charging Sprint switched access charges on intraMTA calls that do not qualify for such charges, in violation of its Rhode Island intrastate access tariff. To the extent the tariff purports to allow such charges, they are unenforceable.

166.    Defendant MCIMetro is in breach of its Rhode Island tariff provisions when it bills Sprint for intraMTA calls as they do not qualify for such charges.

167.    As a direct and proximate result of Defendant MCIMetro's conduct as alleged above, Sprint has been damaged in an amount to be proven at trial.

## COUNT XXV
## Breach of Contract/Intrastate IntraMTA Calling (Tennessee)
### (Defendant MCIMetro)

168.    Sprint repeats and realleges each and every allegation of paragraphs 1 through 167 above, and incorporates them by reference as though fully set forth herein.

169.    Defendant MCIMetro's intrastate switched access tariff on file with the Tennessee Regulatory Authority constitutes a contract between MCIMetro and any purchaser of services from that tariff, which includes Sprint.

170.    Defendant MCIMetro is charging Sprint switched access charges on intraMTA calls that do not qualify for such charges, in violation of its Tennessee intrastate access tariff.  To the extent the tariff purports to allow such charges, they are unenforceable.

171.    Defendant MCIMetro is in breach of its Tennessee tariff provision when it bills Sprint for intraMTA calls as they do not qualify for such charges.

172.    As a direct and proximate result of Defendant MCIMetro's conduct as alleged above, Sprint has been damaged in an amount to be proven at trial.

## COUNT XXVI
## Breach of Contract/Intrastate IntraMTA Calling (Texas)
### (Defendants MCIMetro, MCI Communications and Southwestern Bell)

173.    Sprint repeats and realleges each and every allegation of paragraphs 1 through 172 above, and incorporates them by reference as though fully set forth herein.

174.    Defendants MCIMetro, MCI Communications and Southwestern Bell's intrastate switched access tariffs on file with the Texas Commission constitute contracts between Defendants MCIMetro, MCI Communications and Southwestern Bell respectively, and any purchaser of services from those respective tariffs, which includes Sprint.

175.    Defendants MCIMetro, MCI Communications and Southwestern Bell are each charging Sprint switched access charges on intraMTA calls that do not qualify for such charges, in violation of their respective Texas intrastate access tariffs.  To the extent the tariffs purport to allow such charges, they are unenforceable.

176.    Defendants MCIMetro, MCI Communications and Southwestern Bell are each in breach of their respective Texas tariff provisions when they each bill Sprint for intraMTA calls as they do not qualify for such charges.

177.    As a direct and proximate result of Defendants MCIMetro, MCI Communications and Southwestern Bell's respective conduct as alleged above, Sprint has been damaged in an amount to be proven at trial.

### COUNT XXVII
### Declaratory Relief
### (All Defendants)

178.    Sprint repeats and realleges each and every allegation of paragraphs 1 through 177 above, and incorporates them by reference as though fully set forth herein.

179.    The access invoices the Defendants submit to Sprint seeking to collect interstate and/or intrastate switched access charges on intraMTA calling are illegal and improper.  The inclusion of these access charges in bills submitted to Sprint violates the Defendants' interstate and intrastate access tariffs, the Communications Act, and the FCC's implementing rules.

180.    Sprint is entitled to judgment under 28 U.S.C. § 2201(a) declaring that, *inter alia*:

a.      Sprint is not responsible for paying interstate and intrastate access charges on intraMTA calls;

b.      Each Defendant must either create a process that does not assess switched access charges on intraMTA calls, or perform a traffic study, as contemplated by

36

First Report and Order ¶ 1044, to assess the percentage of its calling that is

intraMTA and prospectively submit access bills that subtract that percentage of

calling from the access invoices submitted to Sprint.

**PRAYER FOR RELIEF**

**WHEREFORE,** for the reasons stated above, Sprint Communications Company L.P.

respectfully requests that judgment be entered for Sprint Communications Company L.P. on each

and all of its claims, together with appropriate damages, reasonable costs and fees, including

attorneys' fees and expert fees, and interest together with such other and further relief as the

Court may deem just and equitable under the circumstances.

Respectfully submitted this 2nd day of May 2014.

By:_____
    Richard L. Brophy, #59731MO
    Daniel Sakaguchi, #55254MO
    ARMSTRONG TEASDALE LLP
    7700 Forsyth Blvd., Suite 1800
    St. Louis, MO 63105
    (314) 621-5070
    rbrophy@armstrongteasdale.com
    dsakaguchi@armstrongteasdale.com

and (via *Pro Hac* to be filed)

    Charles W. Steese, #CO-26924
    John T. Osgood, #CO-34999
    Kimberly A. Smiley, #CO-31383
    STEESE EVANS FRANKEL, P.C.
    6400 S. Fiddlers Green Circle, Suite 1820
    Denver, CO 80111
    (720) 200-0676
    (720) 200-0679 (facsimile)
    csteese@s-elaw.com
    josgood@s-elaw.com
    ksmiley@s-elaw.com

ATTORNEYS FOR PLAINTIFF